## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CC-00790-SCT

*THE TRADING POST, INC.*

*v.*

*SHIRLEY A. NUNNERY AND MISSISSIPPI
EMPLOYMENT SECURITY COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/16/97 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JACK GRIER PRICE |
| ATTORNEY FOR APPELLEES: | ALBERT B. WHITE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKERS' COMPENSATION) |
| DISPOSITION: | AFFIRMED - 1/28/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/99 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The Circuit Court of Pike County upheld the decision of the Mississippi Employment Security Commission Board of Review that Shirley Nunnery, a former employee of The Trading Post, receive unemployment benefits. Aggrieved, the Trading Post appeals to this Court assigning the following issues:

**I. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT NUNNERY'S ABSENCE FROM WORK DID NOT CONSTITUTE MISCONDUCT AS REQUIRED BY MISSISSIPPI CODE ANNOTATED § 71-5-513?**

**II. WHETHER THE TRIAL COURT ERRED IN PLACING AN UNDUE BURDEN ON THE TRADING POST?**

¶2. We affirm the decision that Nunnery receive unemployment benefits because her absence did not constitute wilful misconduct.

**I.**

¶3. Shirley Nunnery was employed as a secretary at the Trading Post Inc. from July 1, 1995 until April 22,

1996. Prior to her termination Nunnery asked her boss, Jack Terrell, if she could have Thursday and Friday off because she wanted to help her brother paint his house. Terrell replied that he needed her to be in those two days. Nunnery did not report to work on those days and was subsequently terminated.

¶4. In the past when Nunnery's child had been in intensive care, Terrell had been lenient in letting her take time off from work. Nunnery stated that she would not have taken off the two days had she known that her absence would result in her losing her job.

¶5. After her termination, Nunnery filed a claim for unemployment benefits under the Mississippi Employment Security Law, Miss. Code Ann § § 71-51-1 et seq. (Rev. 1995 & Supp. 1998). On May 21, 1996, a claims examiner denied her request. The examiner's decision was later reversed by a referee for the Mississippi Employment Security Commission, and the Commission's Board of Review affirmed the referee's decision on August 1, 1996.

## II.

¶6. It is well settled that this Court will give great deference to an administrative agency's findings and decisions. *See **Allen v. Mississippi Employment Sec. Comm'n***, 639 So. 2d 904, 906 (Miss. 1994). We will not reweigh the facts in a given case or attempt to substitute our judgment for the agency's judgment. *Id*. We will overturn an agency's decision only where the agency's order: 1) is not supported by substantial evidence; 2) is arbitrary or capricious; 3) is beyond the scope or power granted to the agency; or 4) violates a person's constitutional rights. *Id.* (*citing **Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors***, 621 So. 2d 1211, 1215 (Miss. 1993)). Indeed, there is a rebuttable presumption that an agency's decision was correct, and the burden of proving otherwise is on the challenging party. ***Allen***, 639 So. 2d at 906 (*citing **United Cement Co. v. Safe Air for the Env't,*** 558 So. 2d 840, 842 (Miss. 1990)).

## III.

¶7. The Trading Post argues that the trial court erred in holding that Nunnery's absence from work did not constitute misconduct as required by Miss. Code Ann. § 71-5-513 which specifies when an individual will be disqualified for unemployment benefits. Section 71-5-513 A(1)(b) provides that an individual will be disqualified for benefits:

> For the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work, if so found by the commission, and for each week thereafter until he has earned remuneration for personal services performed for an employer, as in this chapter defined, equal to not less than eight (8) times his weekly benefit amount, as determined in each case.

Miss. Code Ann. § 71-5-513 A(1)(b) (Rev. 1995) (emphasis added).

¶8. The Trading Post asserts that Nunnery's taking two days off when her employer told her that he needed her constituted misconduct connected with her work. Thus, the Trading Post argues that Nunnery was not entitled to unemployment benefits according to § 71-5-513.

¶9. We have defined "misconduct" connected with work as used in § 71-5-513 as:

> conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate

violations or disregard of standards of behavior which the employer as the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within this term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated instances, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.

*City of Clarksdale v. Mississippi Employment Security Comm'n*, 699 So. 2d 578, 581 (Miss. 1997) (*quoting Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982) & collecting authorities). Insubordination in the form of constant or continuing refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority constitutes misconduct within the meaning of the statute. ***Shannon Engineering & Construction, Inc. v. Mississippi Employment Security Comm'n***, 549 So. 2d 446, 449 (Miss. 1989).

¶10. Applying these principles in the past, we have found an absence of misconduct in an employee's single, isolated instance of discussing salary and bonus information with other employees in violation of the employer's verbal prohibition of such discussions on penalty of immediate discharge, ***Gore v. Mississippi Employment Security Comm'n***, 592 So. 2d 1008, 1010 (Miss. 1992). Likewise, we have found a lack of misconduct where an employee's absences from work were caused by child care and transportation problems and occurred after the employee's supervisor thwarted the employee's good faith attempt to change her lunch schedule to avoid or minimize her absence from work, ***Mississippi Employment Security Comm'n v. Bell***, 584 So. 2d 1270, 1274 (Miss. 1991).

¶11. On the other hand, we have recognized that excessive absenteeism may constitute misconduct in some circumstances, ***Barnett v. Mississippi Employment Security Comm'n***, 583 So. 2d 193, 196 (Miss. 1991), and that such misconduct occurred where an employee had an extensive record of absenteeism, had been fully warned and admonished about the problem, and made minimal efforts to contact his employer during his most recent absences, ***id.***, and where an employee was absent from work for treatment for alcoholism after previously receiving such treatment and being warned by his supervisor that any future alcohol-related absences would be treated as unexcused and would result in discharge, ***Mississippi Employment Security Comm'n v. Martin***, 568 So. 2d 725, 726-29 (Miss. 1990).

¶12. The transcript of the hearing before the appeals referee discloses that Nunnery flatly denied Terrell told her that she was needed. She testified that "[h]e did not tell me that I could not take off. He did not tell me I was needed." In response to a question from the referee, she testified that if she had known that taking off would result in her losing her job she would not have taken off. Testimony concerning the occasion when her child was in intensive care was also given in response to a direct question from the referee as to other times when she took off. She contrasted that occasion to the one in question by saying that even if he had told her then, when her baby was sick, that she could not take off she might have taken off anyway.

¶13. The referee found that "[c]laimant did not realize the employer was serious when he told her that she was needed at work as he had always been lenient in the past when she needed time off from work." There is nothing in the sworn testimony that supports that statement. There is nothing whatsoever to support the statement that Nunnery's alleged rationale was based upon past leniency. What is supported by the record is the later finding embodied in the "Opinion" section of the decision as follows:

The testimony shows that the employer did not clearly convey to the claimant that her request for two days off was denied nor did he warn her of the consequences if she missed two days from work. It is the opinion of the Referee the preponderance of evidence does not show the discharge was for wilful misconduct connected with the work as the claimant did not deliberately disobey the employer as his denial of her request was not clearly conveyed to the claimant.

¶14. There was no finding that Terrell specifically told Nunnery that she could not be off. The finding of the Mississippi Employment Security Commission, as shown above, was contrary to that. That finding is sufficient to sustain the action of this agency, as it was affirmed by the board of review and later by the circuit court in the application of our familiar standard of review.

¶15. Absent fraud, we are to accept the findings of fact if supported by substantial evidence and the correct law applied. Miss. Code Ann. § 71-5-531 (Supp. 1998). *See also* **Richardson v. Mississippi Employment Sec. Comm'n**, 593 So. 2d 31, 34 (Miss. 1992). The employer bears the burden of showing misconduct by clear and convincing evidence. The evidence here was the employee's word against that of the employer's representative as to what was said. The referee and the board of review, charged with fact-finding responsibility, found that a denial of permission to be absent was not clearly conveyed and that the absence was not wilful misconduct. Our standard of review dictates that we not disturb that finding.

<h1 style="text-align:center">IV.</h1>

¶16. For the foregoing reasons, the judgment of the circuit court is affirmed.

¶17. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN, P.J., McRAE AND WALLER, JJ., CONCUR. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**MILLS, JUSTICE, DISSENTING:**

¶18. I find that an employee who intentionally absents herself from work after being told by her employer that she cannot have time off is guilty of misconduct. Because the majority finds otherwise, I must respectfully dissent.

¶19. The referee of the MESC defined misconduct as follows:

The term "misconduct" as used in the Mississippi Employment Security Law is usually defined as an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of the standard of behavior which an employer has the right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

**Mississippi Employment Sec. Comm'n v. Martin,** 568 So. 2d 725, 727 (Miss. 1990). In **Martin**, we held that Martin's failure to notify his employer of the absence combined with his excessive absenteeism amounted to misconduct. The majority distinguishes such misconduct from Nunnery's situation since she

stated that her boss did not tell her that he needed her at work. However, the Referee found that Nunnery did not realize her boss was serious when he told her "she was needed at work as he had always been lenient in the past when she needed time off from work." Further, the recorded Claimant's statement of Nunnery reads as follows:

> The claimant was interviewed on 5/17/96 and she stated she did ask to be off several times and Mr. Terrell said he needed her to work but he was always joking around and claimant thought he didn't mean it and took off anyway.

Nunnery conceded in her brief that her boss told her that he needed her at work. She states:

> Claimant testified that Mr. Terrell did not deny her request; that she did not understand Mr. Terrell's comments that 'he needed her' as refusing her request; and that if she had, she would have worked....

> Ms. Nunnery testified that Mr. Terrell did not object to her taking off. She further stated to the Claims Examiner that Mr. Terrell merely stated that he needed her to work.

> ...denial of her request off was not clearly communicated to her.

Thus, although in Nunnery's testimony she denies that her boss told her he needed her, the record is replete with evidence to the contrary. The record also reflects that her employer was lenient in the past with absenteeism when Nunnery had a child in intensive care. However, I see a distinct difference in requesting time off to care for a sick child and requesting time off to paint a relative's house.

¶20. In previous cases, this Court has held that excessive absenteeism may constitute misconduct under Mississippi Code Annotated § 71-5-513. *Barnett v. Mississippi Employment Sec. Comm'n,* 583 So. 2d 193, 196 (Miss. 1991). Likewise, I find that an employee who intentionally absents herself from work after being told by her employer that she cannot have time off is guilty of misconduct. Indeed, such conduct is a deliberate violation of an employer's rules which, as we stated in *Martin,* constitutes misconduct as used in Mississippi Employment Security Law. Further, in *Martin*, we stated that disregarding a standard of conduct an employer has the right to expect constitutes misconduct. For these reasons, I find the Commission's ruling to be arbitrary and unsupported by the evidence.

¶21. The Trading Post argues that if the lower court's decision is upheld an undue burden will be placed on employers to communicate specifically the consequences for every action. The Trading Post cites *Mississippi Employment Sec. Comm'n v. Harris*, 672 So. 2d 739 (Miss. 1996), where we upheld the Board of Review's finding that a teacher showing a rated "R" movie to his class constituted misconduct. *Id.* This Court noted in *Harris* that the principal warned the teacher not to show any movies that did not pertain to the subject he was teaching. *Id.* at 741. The Court opined that when the teacher ignored the principal's warning and showed a rated "R" movie unrelated to his subject, that his conduct constituted misconduct because he wantonly disregarded his employer's interest. *Id.* at 743. The principal in *Harris* did not inform the teacher that he would be fired if he showed another movie unrelated to the subject taught. *Id.*

¶22. Similarly, in the case *sub judice*, Terrell specifically told Nunnery that she could not have time off, but he did not state that if she took off she would be fired. Common sense dictates that an employer should not have to tell an employee specifically that if the employee does not do as the employer asks he or she will be fired. I decline to impose this burden on employers. Therefore, I must respectfully dissent.

¶23. Nunnery's blatant violation of her employer's rules rises to the level of misconduct necessary to disqualify her from unemployment benefits under § 71-5-513. I would reverse the circuit court.

**PITTMAN, P.J., ROBERTS AND SMITH, JJ., JOIN THIS OPINION.**